# EXHIBIT 1

# LOAN AGREEMENT

This Loan Agreement is executed and delivered in connection with that certain loan in the principal amount of Five Million Three Hundred Thousand and 00/100 Dollars ($5,300,000.00) (the "**Loan**") from METROPOLITAN LIFE INSURANCE COMPANY, a New York corporation (the "**Lender**") to MANNING AVENUE PISTACHIOS, a California general partnership, DONALD E. SCHRAMM and NADA L. SCHRAMM, husband and wife, individually and as trustees of the DONALD E. SCHRAMM and NADA L. SCHRAMM REVOCABLE TRUST dated December 2, 2010, KEITH A. THOMSEN and CATHERINE S. THOMSEN, husband and wife, individually and as trustees of THE THOMSEN FAMILY TRUST dated November 24, 2010, and DANIEL L. SWEET and CAROLE A. SWEET, husband and wife (collectively the "**Borrowers**" and individually a "**Borrower**") evidenced by a Promissory Note of even date herewith (the "**Note**") and secured by the Deed of Trust, Security Agreement, Assignment of Rents and Leases and Fixture Filing of even date herewith (the "**Deed of Trust**") encumbering the property described in the Deed of Trust (the "**Property**") and any additional documents required by Lender (the "**Security Documents**"). The Loan is guaranteed under a Loan Guaranty Agreement dated as of even date herewith executed by Farid Assemi, a married man ("**Guarantor**"). The purpose of this Loan Agreement is to set forth the following additional terms and conditions pursuant to which the Loan is granted.

1. **Continued Operations:** Borrower shall continue, in substantially the same manner, structure, and degree as at present, the farming operations on the Property. Borrower acknowledges that such continued operations constitute a significant inducement to Lender to make the Loan.

2. **Notice of Change of Status:** Borrower agrees that it shall promptly notify Lender of any of the following:

    a. if any assets of any Borrower or Guarantor are surrendered in satisfaction of a debt or obligation;

    b. if any existing farm operating partnership or real estate ownership partnership of any Borrower is dissolved, or any trust comprising Borrower is revoked or amended;

    c. upon the commencement of any litigation, including any arbitration or mediation, and of any proceedings before any governmental agency which could materially and adversely affect the Property, the Borrower or Lender.

3. **Representations and Warranties of Borrower:** Borrower hereby represents and warrants that, and agrees to furnish Lender on request with evidence confirming that:

    a. the Property is taxed and billed separately from real property not subject to the Deed of Trust, and no part of the Property is located within a flood zone;

    b. no members of Borrower's immediate family, if Borrower is an individual; no member of Borrower, if Borrower is a limited liability company; no partner of Borrower, if Borrower is a partnership; no stockholder of Borrower, if Borrower is a corporation (other than a corporation listed on a recognized, national stock exchange); or no beneficiary of Borrower, if Borrower is a trust, is an officer or director of Lender or is a relative of an officer or director of Lender within the following categories: a son,

daughter, or descendant of either; a stepson, stepdaughter, stepfather, stepmother; father, mother, or ancestor of either; or a spouse;

c.  neither Borrower, nor any partner of Borrower, nor any member of Borrower, nor any stockholder of Borrower is, and no legal nor beneficial interest in a partner, member, stockholder or beneficiary of Borrower is or will be held, directly or indirectly by, a "foreign person" under the International Foreign Investment Survey Act of 1976, the Agricultural Foreign Investment Disclosure Act of 1978, the Foreign Investments in Real Property Tax Act of 1980, the amendments of such Acts or regulation promulgated pursuant to such Acts;

d.  (1) the Property nor any portion thereof has been used for the production, storage, transportation, release or disposal of any substances defined as "hazardous" or "toxic" under any applicable laws or regulations ("**Hazardous Materials**"), excepting only the storage and use of those pesticides, herbicides and other agricultural chemicals reasonably and customarily used in connection with agricultural operations of the type from time to time conducted on the Property ("**Agricultural Chemicals**"), all of which Agricultural Chemicals have been used in strict compliance with applicable laws, regulations, and labeling requirements, (2) to the best of Borrower's knowledge there has not been any migration of Hazardous Materials onto or under the Property from any offsite sources, (3) no Hazardous Materials have been disposed of, spilled or otherwise released on or under the Property and the Property is not contaminated by any Hazardous Materials, (4) there are no underground storage tanks on or under the Property, whether such tanks are in use, out of service, or decommissioned, and (5) Borrower has not received any notice, and is not aware, of any administrative or judicial investigations, proceedings or actions with respect to violations, alleged or proven, of federal, state or local environmental statutes, regulations or ordinances. Borrower represents and warrants that it and its agents, employees, or tenants (if any) will not generate, store, handle, dispose of or otherwise deal with any Hazardous Materials on the Property, excepting for Agricultural Chemicals, and that any such Agricultural Chemicals will be used in strict compliance with applicable laws, regulations, and labeling requirements;

e.  (1)  As of the date hereof and throughout the term of the loan, (a) Borrower will not be an employee benefit plan as defined in Section 3(3) of the Employee Retirement Income Security Act of 1974, as amended ("**ERISA**"), which is subject to Title I of ERISA, nor a plan as defined in Section 4975(e)(1) of the Internal Revenue Code of 1986, as amended (each of the foregoing hereinafter referred to collectively as "**Plan**"), and (b) the assets of the Borrower will not constitute "plan assets" of one or more such Plans within the meaning of Department of Labor ("**DOL**") Regulation Section 2510.3-101;

(2)  As of the date hereof and throughout the term of the loan, if Borrower is a "governmental plan" as defined in Section 3(32) of ERISA, the closing of the Loan will not constitute or result in a violation of state or local statutes regulating investments of and fiduciary obligations with respect to governmental plans;

(3)  As of the date of the Loan, Borrower will be acting on its own behalf and not on account of or for the benefit of any Plan;

    (4)    Borrower has no present intent to transfer the Loan to any entity, person, or Plan which will cause a violation of ERISA;

    (5)    Borrower shall not assign its interest under the Loan to any entity, person, or Plan which will cause a violation of ERISA;

    (6)    The closing of the Loan and any foreclosures on such Loan will not violate the provisions of ERISA.

4. **Default:** A default under this Loan Agreement shall constitute a default and an Event of Default under the Note, Deed of Trust and Security Documents.

5. **Additional Covenants:** In addition to any other responsibilities of Borrower, Borrower and/or its subsidiaries or affiliates (where applicable) shall:

    a.    allow representatives of Lender to visit and inspect the Property, to examine the books of account and other records and files of Borrower, to make copies thereof and to discuss the affairs, business, finances and accounts of Borrower with Borrower and/or its affiliates or subsidiaries, their respective officers and employees, all at such reasonable times and as often as Lender may request; and

    b.    see **Exhibit A** attached hereto for additional terms and conditions.

6. In the event of a conflict between the terms of the Note, the Deed of Trust and this Loan Agreement, on one hand, and the Agricultural Investments Loan Application executed by Borrower on September 23, 2011, the terms of the Note, Deed of Trust and this Loan Agreement shall prevail.

*[Signatures follow on next page]*

Dated this 13th day of December, 2011.

"BORROWER"

MANNING AVENUE PISTACHIOS, a
California general partnership

By: _____
Donald E. Schramm, Trustee of the Donald E.
Schramm and Nada L. Schramm Revocable
Trust, Its Partner

By: _____
Nada L. Schramm, Trustee of the Donald E.
Schramm and Nada L. Schramm Revocable
Trust, Its Partner

By: _____
Keith A. Thomsen, Trustee of the Thomsen
Family Trust, Its Partner

By: _____
Catherine S. Thomsen, Trustee of the Thomsen
Family Trust, Its Partner

By: _____
Farid Assemi, Trustee of the Farshid Assemi
1997 Ranch Trust, Its Partner

By: _____
Farshid Assemi, Trustee of the Farid Assemi
1997 Ranch Trust, Its Partner

By: _____
Darius Assemi, Trustee of the Amended and
Restated Darius Assemi Revocable Trust,
Its Partner

Loan No. 195197
71049579.1 0053564-00050

4

*[signature]*
DONALD E. SCHRAMM, individually and as trustee of the DONALD E. SCHRAMM and NADA L. SCHRAMM REVOCABLE TRUST dated December 2, 2010

*[signature]*
NADA L. SCHRAMM, individually and as trustee of the DONALD E. SCHRAMM and NADA L. SCHRAMM REVOCABLE TRUST dated December 2, 2010

*[signature]*
KEITH A. THOMSEN, individually and as trustee of THE THOMSEN FAMILY TRUST dated November 24, 2010

*[signature]*
CATHERINE S. THOMSEN, individually and as trustee of THE THOMSEN FAMILY TRUST dated November 24, 2010

*[signature]*
DANIEL L. SWEET

*[signature]*
CAROLE A. SWEET

## EXHIBIT A

## ADDITIONAL TERMS AND CONDITIONS TO LOAN AGREEMENT

(1) FINANCIAL INFORMATION: Borrower shall furnish Lender, within thirty (30) days after receipt of written request from Lender, but in any event within 150 days after Borrower's fiscal year end, the following financial information, certified to be true and correct within:

   (a) Income Statement of Borrower,

   (b) Balance Sheet of Borrower and each Guarantor.

   (c) Tax Returns of each Borrower and each Guarantor.

Said financial statements, including the related schedules and notes, shall be complete and correct in all material respects and fairly present (i) the financial condition of Borrower or Guarantor, as applicable, as of the respective date of said balance sheet and (ii) the results of the operations and changes in financial position of Borrower or Guarantor, as applicable, for the fiscal year ended on said date, all in conformity with generally accepted accounting principles applied on a consistent basis (except as otherwise stated therein or in the notes thereto) throughout the periods involved. Said financial statements shall be certified by an officer or partner or trustee of Borrower, as applicable.

(2) FINANCING STATEMENTS: Borrower hereby authorizes the filing of Uniform Commercial Code financing statements and shall execute security agreements naming Lender as secured party on all of the following, now or hereafter acquired and which are owned by Borrower:

   (a) frost protection equipment, irrigation equipment and drip systems, including wells, pumps, motors, pipes, pivots, wind machines, and related assets located on or used in connection with the Property; and

   (b) crops grown on the Property and all governmental payments or entitlements relating to the Property;

   (c) all water rights, water agreement and related water delivery contracts, easements, permits and licenses;

   (d) all trees, vines, permanent plantings and trellis systems on the Property; and

   (e) all rents, issues, profits or royalties of the Property.

(3) OBLIGATIONS OF BORROWER: Borrower acknowledges that Borrower's present financial condition, as represented by Borrower, constitutes a significant inducement to Lender to make the Loan and Borrower further agrees that it shall not, without the prior written consent of Lender, do any of the following:

   (a) cause or suffer to be placed, any liens (other than for real estate taxes not yet due and payable) or other encumbrances upon the Property other than security interests in the Crops

    grown upon the Property which security interest comply with the requirements set forth hereafter; or

  (b)  become a guarantor or endorser for the indebtedness of another party.

(4)  <u>NO SECONDARY FINANCING</u>.  Borrower shall not encumber, or allow the encumbrance of, any of the Property or other security for the Loan without obtaining the prior written consent of Lender, which may be withheld in Lender's sole discretion.  Notwithstanding the foregoing, upon the written request of the Borrower, Lender will subordinate its interest in crops growing or to be grown on the Property and all governmental payments relating to such crops, but not to trees and permanent plantings (the "Crops") to the security interest of an institutional lender (a "Crop Lender") for one or more loans made to Borrower to finance the production of crops on all or any portion of the Property ("Operating Financing"), upon the satisfaction of each of the following conditions in Lender's sole and absolute discretion:

  (a)  no default or Event of Default exists under the Note, the Deed of Trust, the Security Documents or any other documents executed to evidence or secure the Loan nor does any event exist which with the giving of notice of the passage of time or both would constitute a default or Event of Default;

  (b)  Borrower has provided Lender with proforma cash flow projections demonstrating to Lender's reasonable satisfaction that the amount of the Operating Financing will not render the security for the Loan inadequate or impair the Borrower's ability to pay and perform its obligations under the Loan, together with copies of all documents prepared to evidence or secure the Operating Financing;

  (c)  the subordination shall be for one crop year only;

  (d)  no outstanding lien remains for an Operating Financing for which Lender has previously subordinated;

  (e)  any subordination to be provided by Lender must be evidenced by a subordination or intercreditor agreement to be entered into between Lender and the Crop Lender on terms and conditions satisfactory to Lender in accordance with reasonable terms customarily agreed to between lenders in similar circumstances;

  (f)  under no circumstances will the subordination of Lender's security interest in Crops extend to Crops produced on the Property after the harvest of any Crops growing at the time of transfer of title to the Property pursuant to judicial or nonjudicial foreclosure of the Deed of Trust; and

  (g)  any default under the Operating Financing shall constitute a default under this Agreement, the Note and the Deed of Trust.

(5)  SUBSTANTIAL BENEFITS, CONSEQUENCES OF LOAN STRUCTURE:

  (a)  Each Borrower understands and agrees that:

  (i) unless and to the extent otherwise released by the Lender in writing, the Property pledged by each Borrower, will secure the entire amount of the Loan under the Note;

  (ii) a default by any or all of the Borrowers under the Deed of Trust, or any default by any Borrower under the Note, the Security Documents or other loan documents evidencing or securing any portion of the Loan will constitute a default under the entire Loan and the Note and other Loan Documents executed or delivered to evidence or secure the Loan or any portion thereof;

  (iii) no Borrower will be entitled to the release of Lender's security interest in any portion of the Property owned by such Borrower until the entire Loan has been paid in full;

  (iv) a result of the structure of the Loan is that all of the Property, regardless of the form by which it is encumbered or the ownership, shall now be security for the repayment of the Note, and shall be available to satisfy the obligations incurred in connection with the Loan and the Note;

  (v) a default by any Borrower under any Note or the Security Documents could result in the judicial or nonjudicial sale of some or all the Property for the Loan, and the application of the proceeds from such sale to complete or only partial satisfaction of the joint and several obligations of the respective Borrower under the Note or Security Documents.

(b) Due to the business relationships among the Borrowers and Guarantor (collectively, the "Obligors"), there is a community of interests among the Obligors such that the benefits of the Loan and the Note evidencing the Loan flowing to one Obligor also benefits the other Obligors. The benefit of the Loan to each of the Obligors constitutes the reasonably equivalent value of the aggregate transfers made and the aggregate obligations incurred by each of the Obligors in connection with the Loan.

(c) The proceeds of the Loan will be used:

  (i) to refinance certain term financing which is secured by the Real Property; and

  (ii) to pay down unsecured financing and provide working capital.

No portion of the Loan proceeds will be used to pay any antecedent debt owed by any of the Obligors to Lender.

(d) After diligent inquiry, Borrowers have determined:

  (i) the interest rate and repayment terms of the Loan are more favorable than those any could have obtained without the pledge of each Borrower's ownership interest in the Real Property as collateral for the Loan and the joint and several liability of the Borrowers;

  (ii) the relationship of the business operations conducted on the combined property encumbered by the Deed of Trust is such that the property in the aggregate is more

        valuable than the sum of each portion thereof owned by each Borrower, and separate financing of the parcels of Real Property owned by any Borrower would be uneconomical and inefficient; and

        (iii)    the Loan and collateral structure is beneficial to the Borrowers', and the Guarantor's collective interests.

(e)    None of the Borrowers or the Guarantor is insolvent as of the date of this Agreement. None of the Borrowers or the Guarantor will become insolvent as a result of the obligations incurred and transfers made in connection with the Loan. None of the Borrowers or the Guarantor is, or is about to be, engaged in a business or transaction for which such Borrower or Guarantor will have an unreasonably small amount of capital after the closing of the Loan. None of the Borrowers or the Guarantor has incurred, or contemplates incurring, debts beyond such Borrower's or Guarantor's ability to pay as such debts become due.

(f)    The transfers made and obligations incurred by each Borrower and each Guarantor in connection with the Loan are not made with the intent to hinder, delay or defraud any person to which any Borrower or Guarantor was, is, or hereinafter will become, indebted.

(g)    To the extent any Borrower may be deemed a guarantor of any other Borrower's obligations to Lender, each such Borrower hereby waives (a) all rights of subrogation, reimbursement, indemnification and contribution and any other rights and defenses that are or may become available to such guarantying Borrower (each Borrower, when acting in the capacity of a guarantor, being referred to in this Section as a "Obligor") or its successors by reason of Sections 2787 to 2855, inclusive, of the California Civil Code, as amended from time to time, (b) all rights and defenses with respect to its obligations under the Loan Documents by reason of any election of remedies by Lender or its successors in interest, (c) all rights and defenses arising from the alteration of the original Loan obligation or in the event the rights or remedies of the Lender against any Obligor are in any way impaired or suspended, and (d) all rights and defenses because the Note is secured by real property, including, without limitation, any rights or defenses that are directly or indirectly based upon the application of Sections 580a, 580b, 580d or 726 of the California Code of Civil Procedure, as amended from time to time, to the Note or any other obligation of any other Obligors. This waiver is specifically intended to apply to and incorporate all of the waivers permitted by Section 2856(a) of the California Civil Code. By executing this Agreement, and without impairing any other waiver herein, each Obligor acknowledges and agrees as follows:

    (i)    Lender may collect any sums due or becoming due under the Loan Documents from any Guarantor or Obligor without first foreclosing on any real or personal property Collateral pledged by any Obligor as security for the Loan;

    (ii)    If Lender forecloses on any real property collateral pledged or encumbered as security for the Loan:

        (a)    The outstanding amount of the Loan may be reduced only by the price for which that Property is sold at the foreclosure sale, even if the Property is worth more than the sale price; and

  (b) Lender may collect from the Guarantor and Obligors even if Lender, by foreclosing on real property, has destroyed any right the Guarantor or Obligors may have to collect from any other Obligors or Guarantor or any other party;

(iii) This Section is an unconditional and irrevocable waiver of any rights and defenses the Obligors may have because the Loan is secured by real property. These rights and defenses include, but are not limited to, any rights or defenses based upon Sections 580a, 580b, 580d, or 726 of the California Code of Civil Procedure; and

(iv) Each Obligor waives all rights and defenses arising out of an election of remedies by Lender, even though that election of remedies, such as a non-judicial foreclosure with respect to security for a guaranteed obligation, has destroyed such Obligor's rights of subrogation and reimbursement against any other Obligor by the operation of Section 580d of the California Code of Civil Procedure or otherwise.