# EXHIBIT 4

FINANCIAL TITLE COMPANY

44104950- DB

Recording Requested By
and When Recorded Return To:

Melanie J. Aldridge, Esq.
Law Office of Melanie J. Aldridge
1306 West Herndon, Suite 110
Fresno, CA 93711



FRESNO County Recorder
Robert C. Werner
**DOC- 2008-0069195**
Acct 1-Financial Title Company (C)
Tuesday, MAY 13, 2008 08:00:00
Ttl Pd $44.00    Nbr-0002764405
                 GSF/R7/1-12

SPACE ABOVE THIS LINE FOR RECORDER USE

GRANT OF EASEMENTS AND WELL SHARING AGREEMENT

This Grant of Easement (the "Agreement") is made and entered into as of May 16, 2008 by and among Keith Thomsen and Catherine Thomsen, husband and wife, Daniel Sweet and Carole Sweet, husand and wife, and Donald Schramm and Nada Schramm, husband and wife (collectively, the "Cotenancy") and Manning Avenue Pistachios, a California general partnership ("Manning"). The Cotenancy and Manning are referred to herein collectively as the "Owners." This Agreement is made with reference to the following facts:

A. Cotenancy owns that certain real property described on Exhibit A (the "Cotenancy Property"). Manning owns that certain real property described on Exhibit B (the "Manning Property"). The Cotenancy Property and the Manning Property are sometimes referred to as the "Parcels."

B. The Cotenancy Property includes an irrigation well (the "Well") located in that portion of the Cotenancy Property described on Exhibit C (the "Well Site").

C. Cotenancy has agreed to grant to Manning an ownership interest in the Well and various easements and other rights in the Cotenancy Property in order for Manning to use the Well for the irrigation of the Manning Property.

THEREFORE, in consideration of the above recitals and the mutual covenants and agreements contained herein and for other valuable consideration, the parties hereby agree as follows:

1. <u>Grant of Easements to Owners</u>. Cotenancy hereby grants to Manning the following easements and rights (the "Easements") for the purposes specified:

(a) A non-exclusive easement over the Well Site to (i) use, operate, control, manage, maintain, repair or modify the Well and (ii) place power poles and associated power lines thereon and thereover for use in connection with the operation of the Well.

(b) A non-exclusive easement over the West 72 feet of the Cotenancy Property (i) for purposes of ingress and egress to the Well Site, (ii) to install, use, operate, control, run water through, manage, maintain, modify, repair and replace a single underground pipeline (an "Individual Pipeline") connected to the Well to transport water therefrom to the Manning Property and (iii) to place power poles and associated power lines thereon or thereover for use in connection with the operation of the Well.

(c) The nonexclusive right to use the Well and all associated pipelines, casings, valves, pumps, booster pumps, filters, foundations, buildings, motors, fixtures and other property hereafter installed by the parties pursuant to Section 3 of this Agreement which may be necessary or desirable for the production, storage and/or transportation of water from the Well (the "Associated Equipment").

2. <u>Power Charges</u>.

(a) Until electrical power is installed for the Well, the parties shall power the
Well with diesel fuel. All diesel fuel expense shall be allocated between the parties in accordance with their respective use of the Well.

(b) After electrical power has been installed for the Well, Cotenancy shall establish one or more separate accounts for the electrical power supplied to the Well (the "Well Power Accounts") and a separate account for power supplied to the booster pump connected to the Well (the "Booster Power Account"). If the power provider under Well Power Accounts allows, then each Owner shall have the right to select the power rate or schedule to be applicable to power delivered to that Owner's Well Power Account. In the event only one power rate or schedule may be selected for power delivered to the Well, then Cotenancy shall have the sole discretion to select the power rate or schedule for power delivered to the Well and/or the booster pump based on a reasonable determination by Cotenancy of the most cost effective rate or schedule based on the projected use of the Well.

(c) Each Owner shall be responsible for payment of their respective Well Power
Account. If there is a single Well Power Account, the Owners shall keep a log which accurately documents the water meter reading before and after each use of the Well for such Owner and Manning shall reimburse Cotenancy within 15 days of presentation to Manning of a Well Account bill for the portion of the power charges attributable to Manning's use of the Well.

(d) Cotenancy shall be initially responsible for the payment of all amounts
charged to the Booster Power Account. If the amounts charged to the Booster Power Account can be reasonably allocated to an Owner based on the usage of the Well by such Owner (whether through examination of the Well Power Accounts or the log of use of the Well for the corresponding period), then the Booster Power Account charges shall be allocated to each Owner based on their respective use of the Well. However, if one or



more charges to the Booster Power Account are not based on use of the Well, such as standby charges or energy taxes, or if the Owners cannot reasonably agree on the allocation of any charges on the Booster Power Account, then such amounts shall be shared in accordance with each Owner's ownership of the Well described in Section 5 below.

3. <u>Well Maintenance and Repair Costs</u>.

(a) All repair and maintenance expenses, property taxes and other charges or expenses for the Well and the Associated Equipment which are not described in Section 2 above shall be allocated between the Owners in accordance with their respective ownership of the Well set forth in Section 5 below.

(b) Except for costs or expenses described in Section 2 of this Agreement, no Owner shall have the ability to bind the other Owner to pay for any expense relating to the use, repair or maintenance of the Well and/or the Associated Equipment without the written consent of the Owners. Any expenses incurred by an Owner without consent of the other Owner shall be the sole obligation of the Owner incurring or agreeing to those expenses.

4. <u>Pipeline Construction and Maintenance</u>. An Individual Pipeline shall not be deemed to be Associated Equipment and shall be constructed and installed by the Owner benefitted by such Individual Pipeline at such Owner's sole cost and expense. The ownership and control of each Individual Pipeline shall remain with such Owner and such Owner shall be responsible for all repairs and maintenance of their respective Individual Pipeline.

5. <u>Allocation of Use</u>.

(a) The Owners shall have an ownership interest in the Well and be entitled to use the percentage of the groundwater produced by the Well as set forth below:

| | |
|---|---|
| Cotenancy | 50 percent of Well |
| Manning | 50 percent of Well |

In the event the Well is unable to supply sufficient water for the reasonable uses of the parties, or in the event of conflicting demands of the parties which cannot be resolved, the parties shall be entitled to exclusive use of the Well on a rotating schedule based on two consecutive days for Cotenancy and the following two consecutive days for Manning, with the initial order of use to be determined by lot. A day shall be defined as 7:00 a.m. to 6:59 a.m. the following day. If an Owner is unable to use the Well during such Owner's use period because the Well becomes or is inoperative, such Owner shall be entitled to use the Well to commence or complete such Owner's use period as soon as the Well becomes operative.

(b) In the event an Owner is in default in the payment of any Well Power Account charges, Booster Power Account charges or any repair and maintenance charges authorized under Section 3 above, such Owner shall have no right to use the Well unless and until such Owner pays current all delinquent charges plus an amount equal to 10 percent per annum on the delinquent amount.

6. Limitation on Use of Water. Unless otherwise agreed in writing by Owners, all water from the Well shall be used solely on the Parcels and no Owner shall be entitled to transfer, exchange or otherwise convey any water received by such Owner from the Well to any other person or use any water from the Well on any other real property.

7. Nature of Rights. The Easements and other rights described in this Agreement shall be appurtenant to each of the Parcels. The Easements and other rights granted to the Owners by this Agreement, and the restrictions and covenants contained herein, shall run with the land and shall inure to the benefit of and bind the successors and assignees of the Parcels.

8. Reservation of Rights; Nondisturbance. Cotenancy hereby reserves to itself and its successors and assigns the right to use the portion of the Cotenancy Property subject to the Easements for any purposes which will not interfere with Manning's exercise of its rights under this Agreement.

9. Condition of Title to Cotenancy Property. The Easements and other rights described in this Agreement are granted subject to current taxes and assessments and all covenants, conditions, restrictions, reservations, rights, rights of way, easements and encumbrances affecting the Cotenancy Property as of the date hereof.

10. Binding Effect. The Easements and other rights granted in this Agreement, and all of the provisions, rights, powers, covenants, conditions, restrictions and obligations contained in this Agreement shall be binding upon the parties and upon each person having any interest in the Parcels derived through any owner thereof, including without limitation the parties' respective heirs, executors, administrators, successors, grantees and assigns. The Easements and other rights granted herein shall be appurtenant to the Parcels and the Easements and other rights contained in this Agreement shall run with the land.

11. Waiver. The waiver of or failure to enforce any breach or violation of any restriction contained in this Agreement shall not be deemed to be a waiver or abandonment of such restriction, or a waiver of the right to enforce any subsequent breach or violation of such restriction.

12. No Agency or Partnership. Nothing in this Agreement shall be deemed or construed by any person to create the relationship of principal and agent, or of limited or general partnership, or of joint venture, or of any other association between or among any of the parties. No part of this Agreement shall be construed as creating any rights in the general public, nor shall any part be deemed to be a gift or dedication for public use of



any portion of the properties described in this Agreement.

      13. <u>Further Documents</u>. Each party shall, as often as reasonably requested, execute, acknowledge and deliver, or cause to be executed, acknowledged and delivered, such further documents and instruments as may be necessary to carry out the intent and purpose of this Agreement.

      14. <u>Governing Law</u>. This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of California.

      15. <u>Attorneys' Fees</u>. In the event any party to this Agreement files an action or commences arbitration against any other party to interpret or enforce the terms of this Agreement, the prevailing party in such action or arbitration shall be entitled to recover his attorneys' fees and costs (whether or not taxable).

      16. <u>Entire Agreement</u>. This Agreement contains or expressly incorporates by reference the entire and exclusive agreement of the parties with respect to the matters contemplated herein and supersedes all prior negotiations and agreements (written, oral or otherwise) related thereto. This Agreement shall not be amended or modified in any way except by a written instrument which is executed by each party to this Agreement.

      17. <u>Exhibits</u>. Each of the exhibits attached hereto is expressly made a part hereof by reference as though fully set forth in this Agreement.

      18. <u>Severability</u>. In the event a court of competent jurisdiction or arbitrator determines any provision of this Agreement is void or unenforceable, such provision shall be deemed reformed so as to be valid or enforceable to the maximum extent possible and the remaining provisions of this Agreement shall remain in full force and effect.

      IN WITNESS WHEREOF, the parties have executed this Agreement on the date first above written.

"Cotenancy"

*/s/ Keith Thomsen*
Keith Thomsen

*/s/ Catherine Thomsen*
Catherine Thomsen

*/s/ Daniel Sweet*
Daniel Sweet

5

_____
Carole Sweet

_____
Donald Schramm

_____
Nada Schramm

Manning Avenue Pistachios

By:_____
Farid Assemi, Trustee, Partner

By:_____
Keith Thomsen, Partner

EXHIBIT A

"Cotenancy Property"

That certain real property located in Fresno County, California, described as follows:

The Southwest quarter of Section 25, Township 15 South, Range 13 East, Mount Diablo Base and Meridian, in the County of Fresno, State of California, according to the Official Plat thereof.
APN: 027-180-72S

EXHIBIT B

"Manning Property"

That certain real property located in Fresno County, California, described as follows:

The Northwest quarter of Section 25, Township 15 South, Range 13 East, Mount Diablo Base and Meridian, in the County of Fresno, State of California, according to the Official Plat thereof.
APNs: 027-180-62 and 027-180-63

# EXHIBIT A

"Cotenancy Property"

That certain real property located in Fresno County, California, described as follows:

The Southwest quarter of Section 25, Township 15 South, Range 13 East, Mount Diablo Base and Meridian, in the County of Fresno, State of California, according to the Official Plat thereof.

APN: 027-180-72S

# EXHIBIT B

## "Manning Property"

That certain real property located in Fresno County, California, described as follows:

Parcel 1:

The South three-fourths of the Northwest quarter of Section 25, Township 15 South, Range 13 East, Mount Diablo Base and Meridian, in the County of Fresno, State of California, according to the United States Government Township Plat thereof.

Parcel 2:

The North half of the North half of the Northwest quarter of Section 25, Township 15 South, Range 13 East, Mount Diablo Base and Meridian, in the County of Fresno, State of California, according to the United States Government Township Plat thereof.

Except therefrom the North 100 feet thereof.

# EXHIBIT C

## "Well Site"

An area 100 feet by 100 feet around the Well currently located in the Southwest corner of the Southwest quarter of Section 25, Township 15 South, Range 13 East, Mount Diablo Base and Meridian, in the County of Fresno, State of California, according to the Official Plat thereof.

APN: 027-180-72S

52218.001\WellSharingAgt2

State of California
County of _Stanislaus_   *LMR*

On _4/14/08   4/14/08_ before me, _Lillian Mae Refuerzo, Notary Public_
(insert name and title of the officer) personally appeared
_Carole Ann Sweet_,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name
(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Lillian Mae Refuerzo_ (Seal)

[Seal: LILLIAN MAE REFUERZO, Commission # 1683508, Notary Public - California, Stanislaus County, My Comm. Expires Jul 23, 2010]

State of California
County of _Stanislaus_

On _4/14/08_ before me, _Lillian Mae Refuerzo, Notary Public_
(insert name and title of the officer) personally appeared
_Daniel NMN Sweet_,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name
(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Lillian Mae Refuerzo_ (Seal)

[Seal: LILLIAN MAE REFUERZO, Commission # 1683508, Notary Public - California, Stanislaus County, My Comm. Expires Jul 23, 2010]



State of California
County of __Fresno__ )

On __April 21, 2008__ before me, __Cristina G. Lopez, Notary Public__
(insert name and title of the officer) personally appeared
__Donald Schramm and Nada Schramm__,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name
(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature __Cristina G. Lopez__ (Seal)

> CRISTINA G. LOPEZ
> Commission # 1552075
> Notary Public - California
> Fresno County
> My Comm. Expires Feb 12, 2009


State of California
County of _____ )

On _____ before me, _____
(insert name and title of the officer) personally appeared
_____,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name
(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

State of California
County of __Fresno__ )

On __April 18, 2008__ before me, __Cristina G. Lopez__, Notary Public, personally appeared __Keith Thomsen and Catherine Thomsen__ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature __Cristina G. Lopez__ (Seal)

> CRISTINA G. LOPEZ
> Commission # 1552075
> Notary Public - California
> Fresno County
> My Comm. Expires Feb 12, 2009


State of California
County of __Fresno__ )

On __April 18, 2008__ before me, __Cristina G. Lopez__, Notary Public, personally appeared __Farid Assemi__, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature __Cristina G. Lopez__ (Seal)

> CRISTINA G. LOPEZ
> Commission # 1552075
> Notary Public - California
> Fresno County
> My Comm. Expires Feb 12, 2009

