# EXHIBIT 6

# UNSECURED INDEMNITY AGREEMENT

This Unsecured Indemnity Agreement (this "Agreement") is made as of December 13, 2011, by MANNING AVENUE PISTACHIOS, a California general partnership, DONALD E. SCHRAMM and NADA L. SCHRAMM, husband and wife, individually and as trustees of the DONALD E. SCHRAMM and NADA L. SCHRAMM REVOCABLE TRUST dated December 2, 2010, KEITH A. THOMSEN and CATHERINE S. THOMSEN, husband and wife, individually and as trustees of THE THOMSEN FAMILY TRUST dated November 24, 2010, and DANIEL L. SWEET and CAROLE A. SWEET, husband and wife (collectively, jointly and severally, the "**Borrower**"); and FARID ASSEMI, a married man ("**Guarantor**") to and for the benefit of METROPOLITAN LIFE INSURANCE COMPANY, a New York corporation and its successors and assigns ("**Lender**"). The Borrower and Guarantor are hereinafter collectively referred to as the "**Indemnitors**".

WHEREAS, Lender has agreed to make a Loan to Borrower in the original principal amount of Five Million Three Hundred Thousand and 00/100 Dollars ($5,300,000.00) (the "**Loan**") secured by a certain Deed of Trust, Security Agreement, Assignment of Rents and Leases and Fixture Filing dated as of even date herewith (the "**Deed of Trust**"), encumbering certain real property more particularly described on Exhibit "A" attached hereto and incorporated herein by reference, and all improvements now or hereafter located thereon, located in Fresno County, California (the "**Property**").

WHEREAS, Lender is unwilling to accept the Property as collateral for the Loan unless Indemnitors makes certain warranties regarding the Property and agrees to indemnify Lender from any loss or liability which might result from certain conditions on the Property.

NOW, THEREFORE, to induce Lender to accept the Property as collateral for the Loan, Indemnitors hereby jointly and severally warrant, covenant and agree as follows:

1. REPRESENTATIONS AND WARRANTIES.

Each Indemnitor represents and warrants the following, on the basis of their diligent examination and inquiry:

    1.1 No Hazardous Substances (meaning hazardous, toxic, infectious or radioactive substances, wastes or materials listed or defined by any federal, state or local environmental statute, regulation or ordinance and including petroleum oil and its fractions ("Hazardous Substances")) are or have been used, treated, stored, generated, manufactured, transported or otherwise handled on the Property, except those pesticides, herbicides and other agricultural chemicals or products customarily used in agricultural and commercial operations of the type conducted on the Property which have been used in accordance with applicable laws and regulations.

  1.2 No Hazardous Substances have been disposed of, spilled or otherwise released on or under the Property, and the Property is not otherwise contaminated by any Hazardous Substances.

  1.3 No Hazardous Substances have been disposed of, spilled or otherwise released on or under any property adjacent to the Property.

  1.4 No outstanding liens or restrictions on use or development have been placed on the Property under any federal, state or local environmental laws.

  1.5 No Indemnitor has received any notice, or is aware, of any administrative or judicial investigations, proceedings or actions with respect to violations, alleged or proven, of federal, state or local environmental statutes, regulations or ordinances.

  1.6 There are no underground storage tanks on or under the Property, whether such tanks are in use, out of service or decommissioned and whether or not regulated.

 2. RESTRICTED ACTIVITIES

Without the prior written consent of Lender, Indemnitors shall not engage in, or permit any tenant or other person to engage in, any activity or conduct on the Property that would, or could reasonably be expected to, cause any of the representations set forth in Article 1 above to cease to be true, correct and complete for any time before the Loan is paid in full. Such consent by Lender shall be within Lender's sole discretion and may be conditioned upon the receipt by Lender of such assurances as Lender may deem necessary or desirable to ensure that the value of its Deed of Trust and security interest in the Property will not in any way become impaired because of contamination resulting from any such activities.

 3. NOTICE

Indemnitors shall immediately notify Lender upon becoming aware of any of the following:

  3.1 Any spill, disposal or other release of a Hazardous Substance on or under the Property or property adjacent to the Property, other than the use of agricultural chemicals and products customarily used in agricultural and commercial operations of the type conducted on the Property which have been used in accordance with applicable laws and regulations.

  3.2 Any notice or communication from a governmental agency or any other person directed to Indemnitor or any tenant of the Property or any other person relating to Hazardous Substances on, under or adjacent to the Property or any violation of any Environmental Laws involving any Indemnitor or the Property.

3.3     Any fact or change in circumstances that would or reasonably could be expected to cause any of the representations and warranties set forth in Article 1 above to cease to be true for any time before the Loan is paid in full.

3.4     Any matter relating to Hazardous Substances or federal, state, or local environmental statutes, regulations, or ordinances that would give a reasonably prudent lender reason to be concerned that the value of such lender's lien and security interest in the Property may be reduced or threatened.

4.     INDEMNIFICATION.

To the fullest extent allowed by law, Indemnitors shall indemnify, defend and hold harmless Lender and its affiliated companies (meaning any entity of which Lender owns, directly or indirectly, fifty percent (50%) or more), their officers, directors, employees and agents, and any successors to Lender's interest in the Property, their directors, officers, employees and agents (collectively, "Indemnitees") against any and all claims, demands, fines, losses, liabilities, costs and expenses (including attorneys' fees at trial and on any appeal or petition for review) (collectively "Claims") arising out of, in connection with or in any way relating to the breach of any of the representations, warranties or covenants contained in this Agreement, or the use, treatment, storage, generation, manufacture, transport, release, spill, disposal or other handling of Hazardous Substances on, about or related to the Property.  Claims shall include without limitation (a) the cost of all investigatory, removal, remedial and other response action required by any federal, state or local environmental law, by judicial order or by order of or agreement with any government authority having jurisdiction under any such law, (b) claims for injury to or death of any person, including an Indemnitee, and (c) claims for damages to property of any other person, including claims for diminution in value or loss of use.

5.     SURVIVAL.

The representations, warranties and covenants contained in this Agreement shall survive the delivery of a deed in lieu of foreclosure to Lender or any successor or assignee of Lender and shall survive any foreclosure of the Property by Lender or any successor or assignee of Lender, and shall be for the benefit of Lender and any successor or assignee to Lender as holder of any mortgage or security interest in the Property or as owner of the Property following foreclosure or the delivery of a deed in lieu of a foreclosure.

6.     BREACH/REMEDIES.

Any breach of this Agreement shall constitute a default under the Deed of Trust and all other loan documents evidencing or securing the Loan.  Lender shall have all rights and remedies available hereunder or in law or equity in addition to and not limited by any other rights or remedies Lender may have under the Deed of Trust or other Loan documents.  Notwithstanding the foregoing, neither this Agreement nor any obligation hereunder shall be deemed to be secured by the Deed of Trust or other Loan documents, except to the extent amounts payable

under this Agreement are added by Lender to the Loan pursuant to the terms of the Deed of Trust or other Loan documents, it being understood that this Agreement shall be a separate, unsecured obligation of each Indemnitor.

7. GENERAL.

7.1 Costs and Attorneys' Fees. In the event any suit or action is instituted to enforce any of the terms of this Agreement, the prevailing party shall be entitled to recover reasonable attorneys' fees, at trial, on any appeal, and on any petition for review, in addition to all other sums provided by law.

7.2 Notices. Any notices required or permitted to be given under this Agreement shall be in writing and shall be given in the manner set forth for giving notices under the Deed of Trust.

7.3 Waiver. Any waiver with respect to the provisions of this Agreement shall not be effective unless in writing and signed by the party against whom it is asserted. No such waiver shall constitute a waiver of any subsequent breach or default.

7.4 Severability. If in any judicial proceeding a court shall refuse to enforce all the provisions of this Agreement, any unenforceable provisions shall be deemed eliminated from this Agreement for the purpose of that proceeding as is necessary to permit the remainder of the Agreement to be enforced in that proceeding.

7.5 Governing Law. This Agreement shall be governed by the laws of the State of California.

7.6 Joint and Several. The obligations of each of the Indemnitors hereunder shall be joint and several.

[*Signatures on following page.*]

DATED this 13th day of December, 2011.

       "INDEMNITORS"

       MANNING AVENUE PISTACHIOS, a
       California general partnership

       MANNING AVENUE PISTACHIOS, a California general
       partnership

By: */s/ Donald E. Schramm*
    Donald E. Schramm, Trustee of the Donald E.
    Schramm and Nada L. Schramm Revocable Trust,
    Its Partner

By: */s/ Nada L. Schramm*
    Nada L. Schramm, Trustee of the Donald E.
    Schramm and Nada L. Schramm Revocable Trust,
    Its Partner

By: */s/ Keith A. Thomsen*
    Keith A. Thomsen, Trustee of the Thomsen Family
    Trust, Its Partner

By: */s/ Catherine S. Thomsen*
    Catherine S. Thomsen, Trustee of the Thomsen
    Family Trust, Its Partner

By: */s/ Farid Assemi*
    Farid Assemi, Trustee of the Farshid Assemi 1997
    Ranch Trust, Its Partner

By: */s/ Farshid Assemi*
    Farshid Assemi, Trustee of the Farid Assemi 1997
    Ranch Trust, Its Partner

By: *[signature]*

                Darius Assemi, Trustee of the Amended and Restated Darius Assemi Revocable Trust

_____
DONALD E. SCHRAMM, individually and as trustee of the DONALD E. SCHRAMM and NADA L. SCHRAMM REVOCABLE TRUST dated December 2, 2010

_____
NADA L. SCHRAMM, individually and as trustee of the DONALD E. SCHRAMM and NADA L. SCHRAMM REVOCABLE TRUST dated December 2, 2010

_____
KEITH A. THOMSEN, individually and as trustee of THE THOMSEN FAMILY TRUST dated November 24, 2010

_____
CATHERINE S. THOMSEN, individually and as trustee of THE THOMSEN FAMILY TRUST dated November 24, 2010

_____
DANIEL L. SWEET

_____
CAROLE A. SWEET

## SPOUSAL CONSENT

The undersigned, as the spouse of FARID ASSEMI, hereby signs and consents to this "Agreement" for the purpose of binding and consenting to the commitment of the marital community property of FARID ASSEMI and the undersigned as assets available for satisfaction of obligations under the Agreement, and for the purpose of acknowledging and agreeing that (i) no consent of the undersigned shall be required for any future modification of the Agreement or the obligations undertaken thereunder, and (ii) any community property of FARID ASSEMI and the undersigned which shall hereafter be transmuted into separate property of the undersigned shall be available for satisfaction of obligations under the Agreement.

By: *[signature]*
Cheryl Assemi

# EXHIBIT "A"

## Legal Description

The following real property situated in Fresno County, California:

PARCEL 1: (APN: 027-171-21-S AND 027-171-23-S)

THE NORTHEAST QUARTER OF SECTION 29, TOWNSHIP 15 SOUTH, RANGE 13 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE COUNTY OF FRESNO, ACCORDING TO THE OFFICIAL PLAT THEREOF.

EXCEPTING THEREFROM THAT PORTION THEREFROM CONVEYED TO THE STATE OF CALIFORNIA, BY DEED RECORDED APRIL 21, 1965 IN BOOK 5158 PAGE 733 OF OFFICIAL RECORDS, AS DOCUMENT NO. 33410.

PARCEL 2: (APN: 027-180-62)

THE SOUTH THREE-FOURTHS (SOUTH 3/4) OF THE NORTHWEST QUARTER OF SECTION 25, TOWNSHIP 15 SOUTH, RANGE 13 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE COUNTY OF FRESNO, ACCORDING TO THE OFFICIAL PLAT THEREOF.

PARCEL 3:(APN: 027-180-63)

THE NORTH HALF OF THE NORTH HALF OF THE NORTHWEST QUARTER OF SECTION 25, TOWNSHIP 15 SOUTH, RANGE 13 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE COUNTY OF FRESNO, ACCORDING TO THE OFFICIAL PLAT THEREOF.

EXCEPT THEREFROM THE NORTH 100 FEET THEREOF.

PARCEL 4:(APN: 038-060-61-S)

THAT PORTION OF THE NORTH HALF OF THE SOUTHEAST QUARTER OF SECTION 5, TOWNSHIP 16 SOUTH, RANGE 14 EAST, MOUNT DIABLO BASE AND MERIDIAN, LYING NORTH OF THAT CERTAIN PARCEL OF LAND GRANTED TO THE UNITED STATES OF AMERICA AS DESCRIBED IN THAT CERTAIN DEED EXECUTED BY RABB BROS, A CO-PARTNERSHIP COMPOSED OF ROY K RABB AND JOHN C RABB, PARTNERS, RECORDED NOVEMBER 15, 1963, IN BOOK 4929 PAGE 440 OF OFFICIAL RECORDS, INSTRUMENT NO. 90952

EXCEPTING THEREFROM ALL OIL, GAS, PETROLEUM AND OTHER HYDROCARBON SUBSTANCES AND MINERALS THEREIN AND THEREUNDER, AS RESERVED OF RECORD.

SAID LEGAL DESCRIPTION IS MADE PURSUANT TO THAT CERTAIN CERTIFICATE OF COMPLIANCE RECORDED FEBRUARY 04, 2011 AS INSTRUMENT NO. 2011-0019411 OF OFFICIAL RECORDS.

PARCEL 5:(APN: 038-060-97-S)

LOTS 21, 22, 27 AND 28, IN SECTION 4, TOWNSHIP 16 SOUTH, RANGE 14 EAST, MOUNT DIABLO BASE AND MERIDIAN, ACCORDING TO THE MAP OF A PART OF CALIFORNIA LAND COMPANY'S TRACT NO. 1, RECORDED MAY 8, 1912, IN BOOK 7 PAGE 49 OF RECORD OF SURVEYS, RECORDS OF SAID COUNTY.

EXCEPTING THEREFROM ALL THAT PORTION OF SAID SOUTH HALF OF SECTION 4, OF THAT CERTAIN PARCEL OF LAND GRANTED TO THE UNITED STATES OF AMERICA AND DESCRIBED IN THAT CERTAIN DEED EXECUTED BY RABB BROS., A COPARTNERSHIP, COMPOSED OF ROY K. RABB AND JOHN C. RABB, PARTNERS, RECORDED NOVEMBER 15, 1963, IN BOOK 4929 PAGE 440 OF OFFICIAL RECORDS, INSTRUMENT NO. 90952.

ALSO EXCEPT ALL OIL, GAS, PETROLEUM AND OTHER HYDROCARBON SUBSTANCES AND MINERALS LOCATED IN, UNDER AND UPON SAID PROPERTY, AS RESERVED IN THE DEED FROM ELISABETH C. MCCOY, A WIDOW, TO MURIETTA FARMS COMPANY, A CORPORATION, DATED SEPTEMBER 18, 1950, RECORDED SEPTEMBER 20, 1950, IN BOOK 2903 PAGE 343 OF OFFICIAL RECORDS, INSTRUMENT NO. 50801.

PARCEL 6:(APN: 038-060-65-S)

THE FRACTIONAL NORTHWEST QUARTER OF SECTION 5, TOWNSHIP 16 SOUTH, RANGE 14 EAST, MOUNT DIABLO BASE AND MERIDIAN, ACCORDING TO THE OFFICIAL PLAT THEREOF;

EXCEPT THEREFROM THAT PORTION THEREOF LYING WITHIN THE 39.51 ACRE PARCEL OF LAND DESCRIBED AS PARCEL 1 IN THE LAND PURCHASE CONTRACT BETWEEN THE U.S.A. AND RABB BROS., A COPARTNERSHIP, RECORDED JUNE 7, 1963 IN BOOK 4869, PAGE 626, FRESNO COUNTY OFFICIAL RECORDS.

ALSO EXCEPT THEREFROM ANY PORTION LYING SOUTH AND SOUTHWESTERLY OF THE 39.51 ACRE PARCEL OF LAND DESCRIBED AS PARCEL 1 IN THE LAND PURCHASE CONTRACT BETWEEN THE U.S.A. AND RABB BROS., A COPARTNERSHIP, RECORDED JUNE 7, 1963 IN BOOK 4869, PAGE 626, FRESNO

COUNTY OFFICIAL RECORDS.

ALSO EXCEPT AN UNDIVIDED ONE-HALF INTEREST IN ALL OIL GAS PETROLEUM, PETROLEUM PRODUCTS, HYDROCARBON SUBSTANCES AND ANY OTHER MINERALS IN, UPON OR UNDER SAID PROMISES, OR HEREAFTER DISCOVERED, AS RESERVED IN THE DEED FROM ELIZABETH C. MCCOY, A WIDOW, TO MURIETTA FARMS COMPANY, A CORPORATION, DATED NOVEMBER 12, 1949, RECORDED NOVEMBER 21, 1949, AS DOCUMENT NO. 54736.

PARCEL 7:(APN: 027-180-72-S)

THE SOUTHWEST QUARTER OF SECTION 25, TOWNSHIP 15 SOUTH, RANGE 13 EAST, MOUNT DIABLO BASE AND MERIDIAN, ACCORDING TO THE OFFICIAL PLAT THEREOF.

EXCEPT ALL THE OIL AND GAS, TOGETHER WITH THE RIGHT TO PROSPECT FOR, MINE AND REMOVE SUCH DEPOSITS FROM SAID PROPERTY UPON COMPLIANCE WITH CONDITIONS AND SUBJECT TO THE PROVISIONS AND LIMITATIONS OF THE ACT OF JULY 17, 1914 (38 STAT. 509) AS RESERVED IN THE PATENT FROM THE UNITED STATES OF AMERICA TO SEBASTIANO PASO, DATED MAY 16, 1927, RECORDED MAY 1, 1942, IN BOOK 2004 PAGE 108 OF OFFICIAL RECORDS, DOCUMENT NO. 17028.