MICHAEL B. BROWN, Bar No. 179222
michael.brown@stoel.com
THOMAS A. WOODS, Bar No. 210050
thomas.woods@stoel.com
BENJAMIN J. CODOG, Bar No. 307034
ben.codog@stoel.com
MICHELLE J. ROSALES, Bar No. 343519
michelle.rosales@stoel.com
STOEL RIVES LLP
500 Capitol Mall, Suite 1600
Sacramento, CA  95814
Telephone: 916.447.0700
Facsimile: 916.447.4781

*Attorneys for Plaintiff BRIGHTHOUSE LIFE INSURANCE COMPANY*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| BRIGHTHOUSE LIFE INSURANCE COMPANY, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>MANNING AVENUE PISTACHIOS, LLC, a California limited liability company; DONALD E. SCHRAMM AND NADA L. SCHRAMM REVOCABLE TRUST DATED 12/2/2010; THE THOMSEN FAMILY TRUST DATED 11/24/2010; DANIEL L. SWEET, an individual; CAROLE A. SWEET, an individual; DONALD E. SCHRAMM, an individual; NADA L. SCHRAMM, an individual; KEITH A. THOMSEN, an individual; the testate and intestate successors of CATHERINE S. THOMSEN, and all persons claiming by, through or under such decedent; FARID ASSEMI, an individual; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 1:24-cv-01233-KES-SAB<br><br>**PLAINTIFF'S *EX PARTE* MOTION FOR ORDER APPOINTING RECEIVER AND FOR PRELIMINARY INJUNCTION**<br><br>Action Filed: October 10, 2024<br>Trial Date: Not Set |

## *EX PARTE* MOTION FOR APPOINTMENT OF RECEIVER AND FOR PRELIMINARY INJUNCTION

Now comes Plaintiff BRIGHTHOUSE LIFE INSURANCE COMPANY ("Brighthouse" or "Plaintiff"), by and through its counsel, and for its *Ex Parte Motion for Appointment of Receiver and for Preliminary Injunction* (the "Motion"), states as follows:

## **INTRODUCTION**

Defendants Manning Avenue Pistachios, LLC; husband and wife Donald E. Schramm and Nada L. Schramm, individually and as trustees of the Donald E. Schramm and Nada L. Schramm Revocable Trust dated December 2, 2010; Keith A. Thomsen and Catherine S. Thomsen, individually and as trustees of the Thomsen Family Trust dated November 24, 2010; and husband and wife Daniel L. Sweet and Carole A. Sweet, individually, together with Guarantor Defendant (collectively, "Defendants" or "Borrowers") are in default to Brighthouse (alone) on an over $2 million secured debt obligation. Since mid-September, Defendant Manning Avenue Pistachios, LLC and/or their affiliates have been sued by other financial institutions for defaults on secured agricultural loans associated with imperiled harvests and imminent loss of trees, irrigated crops, water rights, and delivery systems. Defendants are out of money, and the collateral that is valuable to California's agricultural supply stream *is out of time*. A receivership and injunction to protect the land Brighthouse is responsible for is now warranted and requested.

As security for the obligations under the Loan Documents[1], rights, priority and continuing, recorded (and perfected) security interests in real property and personal property as collateral located in Fresno County were irrevocably assigned to and assumed by Brighthouse. (Declaration of Jeremy Rasmussen (the "Rasmussen Decl.") ¶ 7; Complaint, Ex. 7 (Dkt. 1-6).) As part of the Loan Documents, the Borrowers expressly consented to the appointment of a receiver in the event of default. (Rasmussen Decl. ¶¶ 15-17; Ex. 1, Loan Agreement, § 11.1(g) (Dkt.1-2); Ex. 3, Deed of Trust, Section 14.1(g) (Dkt. 1-4).)

---

[1] Brighthouse incorporates the terms of its October 10, 2024 Complaint (Dkt. 1). Capitalized terms not defined herein shall have the meanings ascribed to them in the Complaint.

Accordingly, pursuant to Federal Rule of Civil Procedure 66 and L.R. 232, Brighthouse requests the appointment of a receiver in order to conserve, maintain, and manage: (i) real property owned by Borrowers, including all appurtenances, improvements, permanent plantings, water rights and irrigation equipment and infrastructure, easements, and rent, issues and profits (the "Real Property") (Rasmussen Decl. 7(a)-(c); Complaint, ¶ 4); and (ii) personal property, not limited to: all equipment, goods, and accounts, whether attached or appurtenant to the Manning Avenue Real Property; all crops (including without limitation harvested crops, farm products, and seed and the products and proceeds thereof) along with all present and future income, rents, issues, profits and revenues of the crops now or hereafter growing on the Manning Avenue Real Property; all rights to the use and enjoyment of water, whether or not appurtenant to the Manning Avenue Real Property, and all improvements for water delivery and storage, and easements and permits associated with the same (collectively, the "Brighthouse Receivership Property").

The Defendants have been provided ample notice of this (and other) defaults. (*See* Ramussen Decl. ¶¶ 20-23; Complaint ¶¶ 31-34.)[2]  The defaults are evidently incurable, as Defendants and Defendants-affiliate efforts to secure long-term financing to support the agriculture have fallen short. (Request for Judicial Notice ("RJN"), Exs. 1-3.)  Here, for instance, Manning Avenue Pistachios, LLC, is already subject to two receiverships, one in the process of being continued and expanded from its original scope.[3]  (*Id.*)  The crop harvest concluded in October 2024, and funding is required to preserve and maintain the Brighthouse Receivership Property. (*See* RJN, Ex. 1.)  Without sufficient funding, the Brighthouse Receivership Property, and particularly the trees comprising a significant portion of the value thereof, are subject to damage or destruction if not properly maintained during and after harvest.

---

[2]  *See also* RJN, Exs. 1 and 2.

[3]  Borrowers and/or their affiliated farming entities have stipulated and agreed to the appointment of a receiver in two related actions involving real property collateral in their integrated farming operations and acknowledged that "Borrowers face significant cash flow issues and will not have sufficient cash to maintain, preserve, and care for the Property, including but not limited to trees and crops" and that "[s]uch actions would cause damage to the Property, including causing the trees (which make up a significant value of the Property) to be damaged or die." (RJN, Ex. 1 at 4:1-4.)

Brighthouse is contractually and equitably entitled to the immediate appointment of a receiver to manage and operate, subject to the discretion of this Court, the Brighthouse Receivership Property. Brighthouse also has the right to a preliminary injunction because it faces irreparable harm should Borrower Owners and/or other associated Defendants' officers and directors, affiliates, creditors or other interested parties interfere with the receiver in the performance of its duties.

This requested order will ensure that Brighthouse shall protect and preserve the Brighthouse Receivership Property. Brighthouse requests that this Court issue an order appointing a receiver over the Brighthouse Receivership Property and enjoining any and all Borrowers, Guarantor Defendant, and third parties from interfering with the receiver's maintenance and operation of the Brighthouse Receivership Property during the pendency of these proceedings. In addition to maintaining and managing the Brighthouse Receivership Property, Brighthouse also requests that the order appointing the receiver instruct the receiver to: operate the Brighthouse Receivership Property pending any sale of such property; sell inventory and collect accounts in the ordinary course of operations; liquidate the Brighthouse Receivership Property, in whole or in part, by auction or by private sale subject to Court approval; and perform all other acts consistent with the terms of the order entered by the Court.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

**A.     THE LOAN DOCUMENTS AND PLAINTIFF'S COLLATERAL.**

On or about December 13, 2011, original lender made a loan to Manning Avenue Pistachios (now Manning Avenue Pistachios, LLC); Donald E. Schramm and Nada L. Schramm, individually and as trustees of the Donald E. Schramm and Nada L. Schramm Revocable Trust dated December 2, 2010; Keith A. Thomsen and Catherine S. Thomsen, individually and as trustees of the Thomsen Family Trust dated November 24, 2010; and husband and wife Daniel L. Sweet and Carole A. Sweet, individually (collectively, "Borrowers") in the original principal amount of Five Million Three Hundred Thousand and 00/100 Dollars ($5,300,000.00) ("Loan"). The Loan was memorialized pursuant to a Loan Agreement dated December 13, 2011 ("Loan Agreement"), by and among the Borrowers and original lender. (Rasmussen Decl. ¶ 5; Loan Agreement, Ex. 1 (Dkt.

STOEL RIVES LLP
ATTORNEYS AT LAW
SACRAMENTO

PLAINTIFF'S *EX PARTE* MOTION FOR
ORDER APPOINTING RECEIVER AND FOR      -4-      1:24-CV-01233-KES-SAB
PRELIMINARY INJUNCTION
126380475.7 0053564-00654

1-2).)  The Loan is evidenced by a Promissory Note ("Note") payable to the order of original lender. (Rasmussen Decl. ¶ 6; Note, Ex. 2 (Dkt. 1-3).)

The Note was endorsed to the order of Brighthouse, pursuant to that certain Allonge dated effective June 30, 2023, and original lender assigned its interest in the Loan, and certain other loans, to Brighthouse pursuant to that certain General Omnibus Assignment and Assumption agreement dated effective June 30, 2023 ("Omnibus Assignment").  Brighthouse is the current holder of the Note.  (Rasmussen Decl. ¶ 7.)

The Loan is secured by, *inter alia*, a Deed of Trust, Security Agreement, Assignment of Rents and Leases and Fixture Filing dated December 13, 2011 ("Deed of Trust"), which was also assigned to Brighthouse. (Rasmussen Decl. ¶ 8; Deed of Trust, Ex. 3 (Dkt. 1-4), Assignment, Ex. 5 (Dkt. 1-6).)  The Deed of Trust gives Brighthouse a security interest in certain Real Property in Fresno County, California, including all appurtenances, fixtures, permanent plantings, rights and benefits thereto, including without limitation all rights under the Grant of Easements and Well Sharing Agreement dated May 16, 2008 and recorded on May 13, 2008 ("Well Sharing Agreement").   (Rasmussen Decl. ¶ 8; Well Sharing Agreement, Ex. 4 (Dkt. 1-5).)  This real property that is the subject of the Deed of Trust is referred to herein as the "Manning Avenue Real Property."

The Deed of Trust and the Loan Agreement further provide that the Loan is secured by "Water Rights," as that term is defined in the Deed of Trust.  (Rasmussen Decl. ¶ 10; Ex. 1, Loan Agreement, Exhibit A, § 2(c) (Dkt. 1-2); Ex. 3, Deed of Trust, Granting Clause E, § 2.7 (Dkt.1-4) (defining "Water Rights").)

In connection with the Loan, Farid Assemi ("Guarantor" or "Guarantor Defendant") entered into a Loan Guaranty Agreement dated as of December 13, 2011 (the "Guaranty"), pursuant to which Guarantor personally guaranteed the Loan. (Rasmussen Decl. ¶ 11; Guaranty, Ex. 7 (Dkt. 1-8).)

STOEL RIVES LLP
ATTORNEYS AT LAW
SACRAMENTO

PLAINTIFF'S *EX PARTE* MOTION FOR ORDER APPOINTING RECEIVER AND FOR PRELIMINARY INJUNCTION

-5-

1:24-CV-01233-KES-SAB

126380475.7 0053564-00654

1    The Manning Avenue Real Property is comprised of approximately 551.38 acres[4] of irrigated agricultural land that grows agricultural products including, but not limited, to field crops, pistachios, and almonds.  (Rasmussen Decl. ¶ 13.)

    The Deed of Trust secures the Loan and encumbers the Manning Avenue Real Property and further includes as additional collateral an absolute assignment of the Borrowers' right, title, and interest in all present and future income, issues, profits, and revenues of the property and crops from the Manning Avenue Real Property and leases relating to and arising from the Manning Avenue Real Property, along with all benefits to be derived therefrom, all as more particularly described therein.  (Rasmussen Decl. ¶ 15; Ex. 3, Deed of Trust, Granting Clause C, § 10.5 (Dkt. 1-4).)

    Pursuant to the Omnibus Agreement, the Loan Agreement, the Collateral Assignment, the Environmental Indemnity Agreement, the Guaranty, and all other collateral instruments and documents made in favor of original lender in connection with the Loan, were assigned and transferred to Brighthouse effective June 30, 2023.  (Rasmussen Decl. ¶ 13.)

    The Deed of Trust contains a security agreement ("Security Agreement") with respect to the Proceeds, Crops, Water Rights, Improvements, Intangibles, Proceeds, and any other personal property including the description of the Property (as all those terms are defined therein), and Manning Avenue Real Property granted to Plaintiff a security interest therein, and provides that:

> **10.1 Security Agreement**.  This instrument shall constitute a security agreement with respect to the Proceeds, Crops, Water Rights, Improvements, Intangibles, Proceeds and Minerals and any other personal property included in the description of the Property, and Trustor hereby grants to Beneficiary a security interest therein.
>
> **10.2 Security Interest**.  Trustor authorizes Beneficiary to file in any relevant jurisdiction any initial financing statements (including fixture filings) and amendments thereto necessary to perfect and

---

[4] Pursuant to a December 6, 2023 Deed of Partial Reconveyance, 38.20 acres of the premises described in the Deed of Trust were reconveyed from the lien thereof.  In other words, the Manning Avenue Real Property at issue incorporates this Partial Reconveyance in its calculation of approximately 551.38 acres of irrigated agricultural land and products, not limited to field crops and pistachio and almond orchards.  (Rasmussen Decl. ¶ 14; Deed of Partial Reconveyance, Ex. 8 (Dkt. 1-9).)

>continue Beneficiary's security interest in the Property. Upon request by Beneficiary, Trustor shall take whatever other action is reasonably requested by Beneficiary to perfect and continue Beneficiary's security interest in the Property. Trustor hereby appoints Beneficiary as Trustor's attorney-in-fact for the purpose of executing or filing any documents necessary to perfect or continue the security interest granted therein. Trustor will reimburse Beneficiary for all expenses incurred in perfecting or continuing this security interest.

The Security Agreement under the Deed of Trust was further perfected by the filing of a UCC-1 Financing Statement with the California Secretary of State, December 23, 2011, Filing #117295138603 ("UCC Filing"). The UCC Filing was "continued" through the official filings of a UCC Financing Statement – Amendment, on December 21, 2016 and on July 8, 2021. The UCC Filing was assigned to Brighthouse through the filing of a UCC Financing Statement – Amendment, filed July 18, 2023. The UCC Filing was amended through the official filing of a UCC Financing Statement – Amendment, on December 14, 2023.[5] (Rasmussen Decl. ¶ 17; UCC Filing, Ex. 9 (Dkt. 1-10).)

The Security Agreement, as perfected by the UCC Filing grants to and perfects in Brighthouse a security interest in and to all of Borrowers' right, title, and interest in personal property not limited to: all equipment, goods, and accounts, products and proceeds, whether attached or appurtenant to the Manning Avenue Real Property; all crops (including without limitation harvested crops, farm products, and seed and the products and proceeds thereof), along with all present and future income, rents, issues, profits, and revenues of the crops now or hereafter growing on the Manning Avenue Real Property; all rights to the use and enjoyment of water, whether or not appurtenant to the Manning Avenue Real Property, and all improvements for water delivery and storage, and easements and permits associated with the same, in addition to membership interests in Poso Creek Water Company, LLC, as further described in the UCC Filing. (Rasmussen Decl. ¶ 17; UCC Filing, Ex. 9 (Dkt. 1-10).)

---

[5] Debtor name Manning Avenue Pistachios changed to Manning Avenue Pistachios, LLC through the filing of a UCC Financing Statement – Amendment, filed August 19, 2024. (Rasmussen Decl. ¶ 16; UCC Filing, Ex. 9 (Dkt. 1-10).)

The Loan Agreement, Note, Deed of Trust, Environmental Indemnity Agreement, Guaranty and UCC Filing, all as assigned to Brighthouse under the Omnibus Assignment, are collectively referred to as the Loan Documents. (Rasmussen Decl. ¶ 18.)

Brighthouse has caused to be provided all notices to enforce its right, title, and interest in all collateral under the Security Agreement and has a priority security interest therein. (Rasmussen Decl. ¶ 19.)

**B.  BORROWERS' INCURABLE DEFAULTS.**

**(1)  Borrowers' Unpaid Loan.**

On September 4, 2024, the investment manager for Brighthouse provided to Borrowers and Guarantor Defendant a Notice of Default and Demand for Payment for the approximate total due of $178,828.15. Borrowers and Guarantor Defendant were further informed that if payment was not received by September 10, 2024, Plaintiff would cause to be initiated a demand and acceleration of the Loan. (Rasmussen Decl. ¶ 20; Notice of Default and Demand for Payment, Ex. 10 (Dkt. 1-11).)

The past due amount was not paid by September 10, 2024, and on September 18, 2024, the investment manager for Plaintiff caused to be sent to Borrowers and Guarantor Defendant a Notice of Default and Acceleration of Debt. (Rasmussen Decl. ¶ 21; Notice of Default and Acceleration of Debt, Ex. 11(Dkt. 1-12).)

As of on or about September 18, 2024, the amounts that remain due and owing under the Loan Documents, including but not limited to all principal outstanding, interest, late charges, attorneys' fees, financial advisor fees, expenses, and advances, are in excess of $2,986,507.22. (Rasmussen Decl. ¶ 32.)

**(2)  Other Defaults.**

Brighthouse does not know the extent of Defendants' defaults to additional lenders or creditors, but these defaults (and the acceleration of the Loan) augment the precarious financial situation for Borrower-Owners and their related entities and affiliates. (*See* RJN, Exs. 1-3.)

/ / /

STOEL RIVES LLP
ATTORNEYS AT LAW
SACRAMENTO

PLAINTIFF'S *EX PARTE* MOTION FOR ORDER APPOINTING RECEIVER AND FOR PRELIMINARY INJUNCTION

-8-

1:24-CV-01233-KES-SAB

126380475.7 0053564-00654

## C.  BORROWER'S FINANCIAL DISTRESS IS INCURABLE AND PUTS THE RECEIVERSHIP PROPERTY AT RISK OF DISTRESS.

Borrower's financial strain and lack of operating cash flow places the Brighthouse Receivership Property in serious peril. Brighthouse is informed and believes, based on discussions with employees at Agriglobe LLC who recently conducted inspections of the Real Property and interviews with Borrower's farm managers, that there has been deferred maintenance of the assets on the Manning Avenue Real Property because of Borrower's financial distress, and the following needs to occur to prevent damage to or destruction of the Property: post-harvest irrigation; post-harvest fertility; post-harvest soil amendments; winter sanitation (removal of any crop remaining); dormant insecticide spray applications; vertebrate control; pruning; and general repairs and maintenance to the irrigation system and other infrastructure. (Rasmussen Decl. ¶ 28.)

Borrower has significant cash flow and liquidity issues, and it has insufficient funds to operate post-harvest. (RJN, Ex. 1 at 4:1-4.) These issues are likely to result in an inability to pay payroll and maintain a sufficient workforce necessary to manage the Brighthouse Receivership Property and care for the trees and plants located on the Brighthouse Receivership Property.

As a result of the foregoing, there is manifest danger of loss, deterioration, and diminution of the Brighthouse Receivership Property, which, along with the revenue generated by its operations, are the primary sources for repayment of the Loans, and Brighthouse, as an interested and secured party, is threatened with material losses and injuries for which it has no adequate remedy at law against Borrower-Owners.

## III.  ARGUMENT AND LEGAL AUTHORITY

### A.  BRIGHTHOUSE IS ENTITLED TO THE APPOINTMENT OF A RECEIVER.

Federal courts may appoint a receiver under their inherent equitable powers, which appointment shall not be disturbed absent an abuse of discretion. *Canada Life Assur. Co. v. LaPeter*, 563 F.3d 837, 843–44 (9th Cir. 2009). Courts consider several factors in their analysis, including: (1) whether the moving party has a valid claim and is likely to succeed in the action; (2) whether the property interest at issue "is in imminent danger of being lost, concealed, injured, diminished in value, or squandered; (3) the possibility of irreparable injury to the moving party's interest in

STOEL RIVES LLP
ATTORNEYS AT LAW
SACRAMENTO

PLAINTIFF'S *EX PARTE* MOTION FOR ORDER APPOINTING RECEIVER AND FOR PRELIMINARY INJUNCTION

-9-

1:24-CV-01233-KES-SAB

126380475.7 0053564-00654

property; (4) whether the defendant is of doubtful financial standing; and (5) whether a receiver is necessary to protect the property or property interest of Plaintiff and other parties. *Id*. at 844; *see also N.Y. Life Ins. Co. v. Watt West Inv. Corp.*, 755 F. Supp. 287, 292 (E.D. Cal. 1991) (same). The chief factors are the adequacy of the security serving as collateral and financial state of the defendant. *N.Y. Life*, 755 F. Supp. at 292.

### 1. Borrowers' Written Agreements Establish Brighthouse's Entitlement to the Appointment of a Receiver.

Federal courts have upheld the validity of receiverships based on an express agreement between lender and debtor. *See Okura & Co. (Am.), Inc. v. Careau Grp.*, 783 F.Supp. 482, 499 (C.D. Cal. 1991) ("the appointment of receiver, as provided for in the Deed of Trust and Security Agreement, for the defendants' property is necessary to protect the plaintiff's interest").

Here, Borrowers expressly consented to the appointment of a receiver in the event of a default. Under the Deeds of Trust, pursuant to the respective "Rights and Remedies on Default," Brighthouse has the right to have a receiver appointed as follows:

> Beneficiary shall have the right to have a receiver appointed to take possession of any or all of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, to collect the Proceeds from the Property and apply the Proceeds, over and above cost of the receivership, against the Indebtedness. Beneficiary may apply to any court of competent jurisdiction for the appointment of a receiver or receivers for the Property and of all the earnings, revenues, rents, issues, profits and income therefrom, <u>ex parte</u>, without notice, and without regard to the sufficiency or value of any security for the obligations secured hereby or the solvency of any party bound for its payment, the expenses of which shall be secured by this Deed of Trust. The receiver may serve without bond if permitted by law. Beneficiary's right to the appointment of a receiver shall exist whether or not apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Beneficiary shall not disqualify a person from serving as a receiver.

(*See* Rasmussen Decl. ¶ 30; Loan Agreement, Ex. 1, ¶ 14(g) (Dkt. 1-2); Deed of Trust, Ex. 4 (Dkt. 1-5)(emphasis in original).)

///

///

### 2. Brighthouse Has a Valid Claim and Is Likely to Succeed.

A receiver is proper here, as Brighthouse is overwhelmingly likely to succeed on the merits of its claims for breach of the Loan. *See N.Y. Life*, 755 F. Supp. at 292 ("[I]n appointing receivers federal courts consider ... plaintiff's probable success in the action"). The Rasmussen Declaration comprehensively addresses Borrowers' continuing defaults under the Loan Documents and Borrowers' failure to timely pay in response to Brighthouse's Notice of Default and Acceleration of Debt. The amounts due and owing to Brighthouse as a result of those defaults continue to increase on a daily basis.

### 3. Brighthouse Is Entitled to a Receiver to Protect Its Property Interests and Collateral From Irreparable Harm.

A court is "well within its discretion" to appoint a receiver where property constituting collateral is "in danger of substantial waste and risk of loss" or "may become insufficient to discharge the debt which it secures." *Canada Life Assur. Co.*, 563 F.3d at 845. Borrowers are experiencing extreme financial difficulties and will not be able to continue operating without additional funds, including being unable to maintain post-harvest activities essential to the maintenance and operation of the Manning Avenue Real Property. (Rasmussen Decl. ¶ 27; RJN Ex. 1 at 4:1-4.) If the Manning Avenue Real Property is not cared for, substantial and long-lasting damage is likely to occur in the next several weeks and beyond. (Rasmussen Decl. ¶ 29.) The Manning Avenue Real Property, including Proceeds, are under an immediate threat of damage, thereby threatening the value of Brighthouse's collateral and its ability to recover. A receivership is immediately necessary to prevent Borrowers from further eroding Manning Avenue Real Property and undermining prospects for repayment.

### 4. Borrowers' Financial Distress Requires the Court to Appoint a Receiver.

A "foremost factor" in whether a receiver should be appointed is the defendant's doubtful financial standing and imminent insolvency. *Canada Life Assur. Co.*, 563 F.3d at 844–45; *N.Y. Life*, 755 F. Supp. at 292 ("Most important among the factors are the adequacy of the security and the financial position of the mortgagor"). The Borrowers are in financial distress. Borrowers and/or

their affiliated farming entities have stipulated and agreed to the appointment of a receiver in two related actions involving real property collateral in their integrated farming operations (RJN, Exs. 1 and 2) and acknowledged that "Borrowers face significant cash flow issues and will not have sufficient cash to maintain, preserve, and care for the Property, including but not limited to trees and crops" and that "[s]uch actions would cause damage to the Property, including causing the trees (which make up a significant value of the Property) to be damaged or die." (RJN, Ex. 1 at 4:1-4.) There is no evidence to suggest that Borrower's financial condition will improve at all, let alone enough to manage, operate, and appropriately care for the Brighthouse Receivership Property.

### B. THE COURT SHOULD GRANT BRIGHTHOUSE A PRELIMINARY INJUNCTION.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat'l Res. Def. Council, Inc.*, 55 U.S. 7, 20 (2008). In determining whether to grant a temporary restraining order or preliminary injunction, courts in this Circuit consider four factors: (1) whether the applicant is likely to succeed on the merits of their claim; (2) whether the applicant is likely to suffer irreparable harm absent the preliminary injunction; (3) whether the equities weigh in favor of the proposed injunction; and (4) whether the preliminary injunction is in the public interest. *Id.* at 20.

The evidence laid out above establishes each factor weighs in favor of Brighthouse and the Court's issuance of immediate injunctive relief. The amounts due and owing under the Loan Documents, the defaults thereunder, and the impossibility to cure any such defaults given the size of the obligations also establish Brightouse's likeliness to succeed on the merits of its claim. Additionally, Brighthouse has also shown above that it is likely to suffer irreparable harm in the absence of relief, and that the balance of the equities tips in its favor. Finally, once the Court appoints a receiver herein, an injunction benefits the public interest because the receiver needs to be able fulfill its duties and obligations without potentially disruptive interference.

/ / /

**C. IF A BOND IS REQUIRED, A NOMINAL UNDERTAKING IS APPROPRIATE.**

Security is required for issuance of a preliminary injunction. Fed. R. Civ. P. 65(c).

### 1. The Court Should Order a Nominal Undertaking.

In light of the Borrowers' financial distress, Brighthouse proposes a nominal undertaking to redress Defendants from any damage that may result from the Court's appointment of a temporary receiver and issuance of a preliminary injunction. Any damage Borrowers' assets may suffer as a result of the Court's appointment of a temporary receiver and issuance of a preliminary injunction would not harm Borrowers, but Brighthouse. An undertaking should be nominal. (*See* Declaration of Phillip Christensen ("Brighthouse Receiver Decl.") ¶ 9.)

### 2. Receiver's Bond.

Under L.R. 232(i), the receiver must maintain an undertaking. Pursuant to L.R. 151(h), Brighthouse, upon issuance of the Court's order appointing the receiver, proposes it post a cash deposit and submit a proposed written instrument, "executed and acknowledged by the party, setting forth the conditions on which the deposit is made, and the fact that the Clerk may collect or sell the obligations and apply ... the cash deposited[] in the case of default." L.R. 151(h).

**D. THE COURT SHOULD APPOINT PHILLIP CHRISTENSEN OF AGRIGLOBE LLC AS RECEIVER.**

Brighthouse requests that Phillip Christensen of Agriglobe LLC (the "Brighthouse Receiver") be appointed as receiver herein. The Declaration of Phillip Christensen ("Brighthouse Receiver Decl.") supporting his proposed receivership is attached hereto, which, among other things, provides for a general overview of Agriglobe LLC and a proposed fee schedule, and attaches the proposed Brighthouse Receiver's curriculum vitae. These documents demonstrate that the proposed Brighthouse Receiver is experienced in the maintenance, management, and daily operation of properties similar to the Brighthouse Receivership Property.

Mr. Christensen is a proper and competent receiver here. He is neither a party nor an attorney for a party to this action; has no interest in the action; and is not related to any judge of this Court. He will accordingly act as an agent of the Court and not of any party, carrying out its receivership duties neutrally and "for the benefit of all who may have an interest in the receivership

STOEL RIVES LLP
ATTORNEYS AT LAW
SACRAMENTO

PLAINTIFF'S *EX PARTE* MOTION FOR ORDER APPOINTING RECEIVER AND FOR PRELIMINARY INJUNCTION — -13- — 1:24-CV-01233-KES-SAB

126380475.7 0053564-00654

property," and it will hold "assets for the court," not for any party. He will provide, as necessary, an inventory, monthly reports, and a final report. *See* L.R. 232(e)(1)–(2).

## IV. CONCLUSION

Based upon all of the foregoing factors, pursuant to Federal Rule of Civil Procedure 66 and L.R. 232, Brighthouse respectfully submits that a receiver must be appointed to operate, preserve, and protect the Manning Avenue Real Property pending a resolution of the above-captioned action. Brighthouse also respectfully request the entry of a preliminary injunction to prevent parties from interfering with the Brighthouse Receiver or the Brighthouse Receivership Property during the pendency of this receivership.

WHEREFORE, in view of the foregoing, the Plaintiff hereby requests that the Court enter an Order:

(i) appointing Phillip Christensen as the Brighthouse Receiver to operate, preserve, and protect the Manning Avenue Real Property, to collect the rents from and pay the expenses of the Manning Avenue Real Property (including the fees and expenses of the Brighthouse Receiver), to turn over the net rents (if any) to Brighthouse on a monthly basis, and to take such other and further actions with regard to the Manning Avenue Real Property as are permitted by the Order and applicable law;

(ii) for an order calendaring a hearing on the continuation of the receivership and order to show cause as to why a preliminary injunction should not issue. See L.R. 232(c); L.R. 231;

(iii) enjoining the Borrowers and Guarantor, their officers and directors, vendors, and any and all third parties from interfering with the Brighthouse Receiver or the Manning Avenue Real Property during the pendency of the receivership; and

(iv) providing Brighthouse with such other and further relief as the Court deems just and appropriate.

| | | |
|---|---|---|
| 1 | DATED: November 21, 2024 | STOEL RIVES LLP |
| 2 | | By: _/s/ Thomas A. Woods_ |
| 3 | | MICHAEL B. BROWN, Bar No. 179222<br>michael.brown@stoel.com |
| 4 | | THOMAS A. WOODS, Bar No. 210050<br>thomas.woods@stoel.com |
| 5 | | BENJAMIN J. CODOG, Bar No. 307034<br>ben.codog@stoel.com |
| 6 | | MICHELLE J. ROSALES, Bar No. 343519<br>michelle.rosales@stoel.com |
| 7 | | *Attorneys for Plaintiff*<br>BRIGHTHOUSE LIFE INSURANCE COMPANY |